**Richard LEIDER, Plaintiff–Appellant,**

v.

**UNITED STATES, United States Treasury Department, and Paul H. O'Neill, Secretary of the Treasury, Defendants–Appellees.**

No. 01–1097.

United States Court of Appeals,
Federal Circuit.

Decided: Aug. 15, 2002.

Rehearing and Rehearing En Banc
Denied: Oct. 23, 2002.

---

* Honorable Walter K. Stapleton, U.S. Circuit
Judge for the Third Circuit, sitting by designa-
tion.

John Glugoski, Righetti & Wynne, of San Francisco, CA, argued for plaintiff-appellant. On the brief was Matthew Righetti.

Katherine M. Kelly, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendants-appellees. With him on the brief were Stuart E. Schiffer, Acting Assistant Attorney General; David M. Cohen, Director; and Mark A. Melnick, Assistant Director. Of counsel on the brief was Marc I. Seldin, Senior Attorney, Financial Management Service, Department of Treasury, of Washington, DC.

Before SCHALL, BRYSON, and DYK, Circuit Judges.

SCHALL, Circuit Judge.

Richard Leider brings this case to us from the United States District Court for the Northern District of California. Mr. Leider brought suit in the district court seeking compensation from the United States under the Fifth Amendment to the Constitution for the alleged taking by the government of interest accumulated in a bankruptcy creditor account. The district court granted the government's motion to dismiss the complaint pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a claim upon which relief could be granted. *See Leider v. United States*, No. C–98–3766 MMC (N.D.Cal.1999) (Order Granting Defendant's Motion to Dismiss). Because we conclude that Mr. Leider has failed to assert the taking of a cognizable property interest, we affirm.

## BACKGROUND

### I.

The pertinent facts are alleged in Mr. Leider's complaint. For purposes of this appeal, we assume the well-pled allegations in the complaint to be true and draw all reasonable inferences in Mr. Leider's favor. *See Roedler v. Dep't of Energy*, 255

F.3d 1347, 1354 (Fed.Cir.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 648, 151 L.Ed.2d 565 (2001); *Highland Falls–Fort Montgomery Cent. Sch. Dist. v. United States,* 48 F.3d 1166, 1169–70 (Fed.Cir. 1995).

In July of 1987, Milton Righetti filed a petition under Chapter 11 of the Bankruptcy Code, *see* 11 U.S.C. § 301 (1982), in the United States Bankruptcy Court for the Northern District of California. Complaint, ¶ 9. In September of that year, his wife, Hope Righetti, also filed a Chapter 11 petition in the Northern District. *Id.* On September 29, 1987, their cases were consolidated. *Id.* Mr. Leider, who was an unsecured creditor of the Righettis, filed a claim for $25,000 in the proceedings. *Id.*

In March of 1996, the bankruptcy court entered a final decree and order closing the case. Complaint, ¶ 10. At that time, the funds on hand were distributed to the Righettis' creditors pursuant to an order of the bankruptcy court. However, due to a change of address, Mr. Leider did not receive his distributive share of $2,162.67 from the proceeds of the Righetti bankruptcy estate. Mr. Leider alleges that he was unaware of the termination of the Righetti bankruptcy proceedings or the distribution of the funds. Complaint, ¶¶ 10–11.

▌ In a bankruptcy proceeding, after 90 days have elapsed from the time funds are distributed to creditors, any checks to creditors that have not been cashed are canceled and the funds represented by the checks are "paid into the [bankruptcy] court." 11 U.S.C. § 347(a) (2000). All such funds received by the bankruptcy court are "deposited with the Treasurer of the United States or a designated depositary, in the name and to the credit of [the] court." 28 U.S.C. § 2041 (2000). After five years, any funds that are still unclaimed are deposited by the bankruptcy court in the United States Treasury "in the name and to the credit of the United States." 28 U.S.C. § 2042 (2000). Thereafter, a creditor entitled to any of the funds may file a claim with the bankruptcy court, and if the claim is approved, the Treasury Department issues a check to the creditor in the principal amount of his or her distributive share. *Id.*

In this case, after the 90–day period had passed, John T. Kendall, the trustee in the Righetti bankruptcy proceedings, transferred the funds that remained unclaimed, including those owed to Mr. Leider, to the clerk of the bankruptcy court for deposit with the United States Treasury pending creditors filing petitions claiming their distributive shares. Complaint at ¶ 10. Approximately two years later, after learning of the resolution of the Righettis' bankruptcy action, Mr. Leider petitioned the bankruptcy court for the payment of his distributive share of the estate. In due course, he received from the court the sum of $2,162.67, without interest. *Id.*

## II.

On September 29, 1998, Mr. Leider filed a class action suit in the United States District Court for the Northern District of California against the United States, the Treasury Department, and former Treasury Secretary Robert Rubin, alleging, *inter alia,* that the government's failure to pay interest on his distributive share of the unclaimed bankruptcy funds constituted a taking of property under the Fifth Amendment.

In due course, the defendants moved to dismiss Mr. Leider's complaint for lack of

jurisdiction and for failure to state a claim upon which relief could be granted, pursuant to Rules 12(b)(1) and 12(b)(6), respectively, of the Federal Rules of Civil Procedure. In an April 12, 1999 Order, the district court denied the defendants' motion to dismiss for lack of jurisdiction. The court held that it had jurisdiction under the Little Tucker Act, 28 U.S.C. § 1346(a)(2) (1994), because Mr. Leider, the only plaintiff in the as yet uncertified class, had filed a claim for interest on his distributive share of the bankruptcy proceeds that did not exceed $10,000. *Leider,* slip. op. at 2.[1]

At the same time, however, the district court ruled that Mr. Leider had failed to state a viable takings claim under the Fifth Amendment. It therefore granted the motion to dismiss under Rule 12(b)(6). The court determined that the statutes mandating the deposit of unclaimed bankruptcy funds into a Treasury account expressly permitted creditors to request and receive their distributive shares at any time. Accordingly, the court reasoned, the government merely "possessed" Mr. Leider's $2,162.67 share, which, as a matter of law, did not constitute a "taking" without compensation in violation of the Fifth Amendment. *Leider,* slip. op. at 5–6. The district court viewed the government's possession of Mr. Leider's funds as resulting not from a compensable taking, but from Mr. Leider's own inaction. As for interest on the funds that the government had in its possession, the court declined to find that "the United States committed an unconstitutional taking by failing to pay in-

terest on unclaimed funds that it was obligated by statute to hold for plaintiff due to his own negligence." *Id.* Finally, while the district court noted that Mr. Leider did not "separately plead a cause of action for breach of fiduciary duty" in support of his claim that interest was taken from him, it ruled that such an alternative basis for recovery was "without merit." *Id.,* slip. op. at 4 n. 2.

Mr. Leider appealed the dismissal to the United States Court of Appeals for the Ninth Circuit. That court *sua sponte* requested briefing on the question of whether it properly could assert jurisdiction over Mr. Leider's appeal in light of the Supreme Court's decision in *United States v. Hohri,* 482 U.S. 64, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987),[2] and the Congressional grant of jurisdiction to this court in 28 U.S.C. § 1295(a)(2) (1994). Thereafter, on November 17, 2000, the Ninth Circuit held that it lacked jurisdiction and ordered a transfer of Mr. Leider's appeal to this court.

## DISCUSSION

### I.

■ The Little Tucker Act confers concurrent jurisdiction upon the Court of Federal Claims and the appropriate United States district court for a "civil action or claim against the United States, not exceeding $ 10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or im-

---

1. Though Mr. Leider filed his complaint as a class action, the district court adjudicated the dispositive Rule 12 motions before considering the question of class certification. *See Leider,* slip. op. at 2.

2. In *Hohri,* 482 U.S. at 75–76, 107 S.Ct. 2246, the Supreme Court held that this court has exclusive jurisdiction over "mixed" cases in which the district court's jurisdiction was based in part on the Little Tucker Act.

plied contract with the United States." 28 U.S.C. § 1346(a)(2). We have exclusive jurisdiction, pursuant to 28 U.S.C. § 1295(a)(2), to review decisions "based, in whole or in part," on the Little Tucker Act. *Rothe Dev. Corp. v. United States DOD,* 262 F.3d 1306, 1316 (Fed.Cir.2001).

## II.

Dismissal for failure to state a claim under Rule 12(b)(6) is proper only when a plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). As indicated above, in reviewing the grant of a Rule 12(b)(6) motion, we assume all well-plead factual allegations in the complaint to be true and draw all reasonable inferences in the plaintiff's favor. Whether the district court properly dismissed Mr. Leider's complaint for failure to state a claim upon which relief could be granted is a question of law, which we review *de novo. Boyle v. United States,* 200 F.3d 1369, 1372 (Fed.Cir.2000).

The Fifth Amendment provides, in pertinent part, as follows: "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V, cl. 4. In evaluating a takings claim, we first consider whether the plaintiff has identified a property interest cognizable under the Fifth Amendment. *See M & J Coal Co. v. United States,* 47 F.3d 1148, 1154 (Fed.Cir.1995). If the plaintiff satisfies the prerequisite of identifying a cognizable property interest, which we have labeled a "bedrock requirement," *Wyatt v. United States,* 271 F.3d 1090, 1097 (Fed.Cir.2001), *cert. denied, E. Min-*

*erals Int'l, Inc. v. United States,* —— U.S. ——, 122 S.Ct. 1960, 152 L.Ed.2d 1021 (2002), we proceed to consider whether the governmental action at issue constituted a taking of that property interest. *M & J Coal,* 47 F.3d at 1154; *Karuk Tribe of Cal. v. Ammon,* 209 F.3d 1366, 1374 (Fed.Cir. 2000).

In an attempt to satisfy the threshold requirement of a property interest, Mr. Leider asserts that the statutes pursuant to which the bankruptcy court deposited in the Treasury unclaimed funds from the Righetti bankruptcy proceedings conferred upon him a right to interest on his share of the funds.[3] We disagree. As we explain below, the deposited funds did not earn interest, and the relevant statutory framework does not impose an obligation on the government to earn and disburse interest to unallocated creditors such as Mr. Leider. Because Mr. Leider cannot assert a property right in interest that never came into existence, there is no way he can assert a viable takings claim under the Fifth Amendment.

## III.

Mr. Leider argues that, by operation of the statutes pursuant to which his distributive share of the bankruptcy proceeds was deposited in the Treasury, he was vested with a compensable property interest. The statute that governs the processing of unclaimed bankruptcy funds states in pertinent part:

> Ninety days after the final distribution ... the trustee shall stop payment on any check remaining unpaid, and any remaining property of the estate shall be paid into the court and disposed of under chapter 129 of Title 28.

---

**3.** Mr. Leider does not assert that his distributive share of the Righetti bankruptcy estate

($2,162.67), which was paid to him, was the subject of an uncompensated taking.

11 U.S.C. § 347(a) (1994). The relevant part of chapter 129 of Title 28, in turn, provides as follows:

> All moneys paid into any court of the United States, or received by the officers thereof, in any case pending or adjudicated in such court, shall be forthwith deposited with the Treasurer of the United States or a designated depositary, in the name and to the credit of such court.
>
> This section shall not prevent the delivery of any such money to the rightful owners upon security, according to agreement of parties, under the direction of the court.

28 U.S.C. § 2041.[4] "Any claimant entitled to any such money may, on petition to the court and upon notice to the United States attorney and full proof of the right thereto, obtain an order directing payment to him." 28 U.S.C. § 2042 (2000).

 Based on this statutory scheme, which mandates the deposit of an unallocated creditor's funds in a Treasury account until the creditor petitions the court for payment, Mr. Leider argues that he enjoys a property interest in the funds and that the "interest follows principal" rule creates a similarly compensable right to interest on the funds. Under the common law rule that "interest shall follow the principal, as the shadow the body," *Beckford v. Tobin*, 1 Ves. 308, 310, 27 Eng. Rep. 1049, 1051 (Ch. 1749), the interest on funds "follows the principal and is to be allocated to those who are ultimately to be the owners of that principal." *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 162, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980).

We agree with Mr. Leider that an unlocated creditor has a property right in his or her distributive share of the funds of a bankruptcy estate. We do not agree, however, that the "interest follows principal" rule applies in this case so as to establish for Mr. Leider a property right to interest on his distributive share of the funds from the Righetti bankruptcy. The reason is that interest was never earned on the funds. Hence, there was no interest to follow principal.

Mr. Leider relies mainly upon *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998). That case involved the State of Texas's requirement that interest earned on money that was paid by clients to attorneys and then was placed in interest bearing accounts be remitted to the Texas Equal Access to Justice Foundation. The Supreme Court was called on to address whether interest earned on money in the accounts was a property right that could support a claim that the Texas requirement constituted a taking of the interest under the Fifth Amendment. Relying on the long-established rule that "interest follows principal," the Court held that the interest indeed constituted a property right. *Id.* at 165–67, 118 S.Ct. 1925. Simply put, " 'a state by *ipse dixit*, may not transform private property into public property without compensation' [and] side-

---

4. As noted above, after remaining in the Treasury account "in the name and to the credit of [t]he court" pursuant to section 2041 for five years, the funds are deposited in the Treasury "in the name and to the credit of the United States." 28 U.S.C. § 2042 (2000). Since Mr. Leider received his distributive share of the bankruptcy proceeds less than five years after they were deposited, the transfer of the funds to "the name and to the credit of the United States," pursuant to section 2042 did not occur. We therefore have no occasion to consider the implications of that provision.

step the Takings Clause by disavowing traditional property interests long recognized under state law." *Id.* at 167, 118 S.Ct. 1925 (quoting *Webb's Fabulous Pharmacies*, 449 U.S. at 164, 101 S.Ct. 446). *Phillips* supports the proposition that to the extent a claimant possesses a property interest in a particular fund, that claimant also possesses a property right to the interest accruing from the fund.[5] However, such a rule does not apply to the present circumstances, where interest never was generated. According to Mr. Leider's own complaint, "the Defendants ... make no effort to properly protect the principal of the unclaimed funds by investing it in interest bearing accounts." In short, because there existed no interest, there was nothing that could be taken. Accordingly, the transformation of "private property into public property without compensation" to which the Supreme Court referred in *Phillips* never occurred.

Also inapposite is the additional case that Mr. Leider cites for the proposition that a property interest was created in interest on the deposited funds by reason of the "interest follows principal" rule. In *Schneider v. California Department of Corrections*, 151 F.3d 1194 (9th Cir.1998), the Ninth Circuit considered whether the California Department of Corrections' policy of withholding from prisoners the interest earned on their inmate trust accounts ("ITAs") constituted a taking under the Fifth Amendment. Under California law, an inmate in a state institution was required to maintain an ITA in order to purchase items in the prison canteen. However, California law also prohibited the inmate from collecting any interest

earned on funds in his ITA. *Id.* at 1196. A group of inmates brought suit in federal district court arguing that California's policy of not paying interest generated by funds in ITAs constituted a taking of private property in violation of the takings clause of the Fifth Amendment. *Id.* Concluding that the inmates did not have a protected property interest in interest earned by funds in their ITA accounts, the district court dismissed the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief could be granted. The court also denied the inmates' leave to file a motion to amend their complaint. *Id.*

On appeal, the Ninth Circuit assumed, as had the district court, that the funds in the ITA accounts had earned interest, a point that was not certain. With that assumption in hand, the court ruled that the district court had erred in dismissing the inmates' complaint. In so ruling, the court relied on the "interest follows principal" rule. The court stated: "[t]he district court erred insofar as it concluded that 'inmates in California do not have a protected property interest in the interest earned on [ITAs]' and [insofar as it] dismissed the prisoners' complaint without leave to amend on that basis." *Id.* at 1201. The Ninth Circuit remanded the case to the district court, instructing the court to "permit discovery to determine whether or not interest actually accrues on the prisoners' ITA funds." *Id.* In the event the district court determined that interest was earned on the funds, it was to permit the inmates to amend their complaint so that they could proceed with their takings claim. *Id.* What distinguishes *Schneider*

---

**5.** Recently, in *United States Shoe Corp. v. United States*, 296 F.3d 1378 (Fed.Cir.2002), we stated that "[f]or the accrued interest to rise to the level of private property, the principal must be held in an identified private account."

from Mr. Leider's case is the fact that here no interest was earned, whereas in *Schneider*, it was assumed that interest was earned and the case was to proceed further only if it was determined on remand that interest was *in fact* earned. Mr. Leider has not pointed to any authority supporting the proposition that interest that was never earned may establish a property right for purposes of the Fifth Amendment that is separate and apart from the right to the underlying principal.[6] Under these circumstances, Mr. Leider is unable to establish "a property interest entitled to protection." *Webb's Fabulous Pharmacies*, 449 U.S. at 161, 101 S.Ct. 446.

## IV.

Alternatively, Mr. Leider argues that the government was holding the unclaimed funds for the rightful owners as required by statute, which action created a trustee relationship and a right to interest on the funds, irrespective of whether such interest actually was earned. According to Mr. Leider, by its failure to invest the funds in accordance with its duty as a statutory trustee, the government breached a fiduciary obligation and improperly took, without compensation, interest that it had a duty to generate.

The short answer to this argument is that the government was not under a fiduciary obligation to invest the unlocated creditors' funds to generate interest, thereby creating a property interest.[7] The plain language of 28 U.S.C. § 2041—the statute under which Mr. Leider's funds were deposited "in the name and to the credit of [the] court"—does not impose an express duty on the government to earn interest on the deposited funds, as a fiduciary, a trustee, or otherwise.[8] The cases on which Mr. Leider relies, *In re Searles*, 166 F.2d 475 (2d. Cir.1948), and *United States v. Klein*, 106 F.2d 213 (3d. Cir.1939), stand for the proposition that the government may act as a statutory trustee where, as in the current version of 28 U.S.C. § 2042, after five years unclaimed bankruptcy funds are deposited, without a beneficial interest indicated, in the Treasury "in the name and to the credit of the United States." However, neither those cases nor any other authority suggest that there is an affirmative duty on the government to earn interest on funds deposited under 28 U.S.C. § 2041, the statute at issue in this case.[9]

That silence is fatal to the argument that section 2041 imposes a fiduciary trust-

---

**6.** *United States v. $277,000 U.S. Currency*, 69 F.3d 1491 (9th Cir.1995), does not help Mr. Leider. In that case, the Ninth Circuit required the government to pay constructive interest to compensate for its improper seizure of $277,000 and the subsequent deposit of that money in a non-interest bearing Treasury account. The court in that case considered the amount of just compensation after concluding that a taking had occurred, which is irrelevant to the distinct question, presented by Mr. Leider on appeal, of whether interest that was never earned may satisfy the threshold property interest requirement.

**7.** Because we conclude that no fiduciary duty arose in this case, we need not address the issue of whether, if such a duty existed, it

would have encompassed the obligation to generate interest.

**8.** The establishment of a common law trust requires three elements: a trustee, a beneficiary, and a trust corpus. *United States v. Mitchell*, 463 U.S. 206, 225, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983).

**9.** As seen above, section 2041 provides for the deposit of unclaimed funds "in the name and to the credit of [the] court." 28 U.S.C. § 2041. In other words, the statute does not provide for the government's general ownership of the unclaimed bankruptcy funds, but instead mandates the funds' deposit with the bankruptcy court.

ee obligation on the government to invest unlocated creditors' funds productively or to pay constructive interest to unlocated creditors. In *United States v. Louisiana,* 446 U.S. 253, 100 S.Ct. 1618, 64 L.Ed.2d 196 (1980), the Supreme Court considered a claim by the State of Louisiana that the federal government's failure to invest funds it held in trust pursuant to an agreement constituted a breach of its duty as a trustee. After noting that "[t]he agreement contains no express provision for the payment of interest or for the use of the funds or for investment" and the rule that "in the absence of specific provision by contract or statute, or express consent . . . by Congress, interest does not run on a claim against the United States," the Court held that "[i]t follows that the same is true as to any claim of duty to invest." *Id.* at 264–65, 100 S.Ct. 1618 (internal quotations omitted). Section 2041 contains no reference to any obligation to earn interest on unlocated creditors' funds. Neither does the statute refer to the creation of a fiduciary duty in connection with interest. Consequently, the statute cannot support the claim that the government breached a duty to earn, or pay, interest on the funds of unlocated creditors in the Righetti bankruptcy proceedings.[10]

## CONCLUSION

For the foregoing reasons, the decision of the United States District Court for the Northern District of California dismissing Mr. Leider's takings claim for failure to state a claim upon which relief could be granted is *AFFIRMED.*

---

10. Mr. Leider argues that he should be granted leave to amend his complaint, ostensibly to include a claim for breach of fiduciary duty independent of his takings claim, even though he did not make such a request in the district court. However, in light of our agreement with the district court that the undisputed facts of this case do not support either a takings claim or a claim for breach of fiduciary duty, permitting Mr. Leider leave to amend would be futile. Accordingly, the district court did not err in dismissing Mr. Leider's complaint without first granting leave to amend. *See Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1298 (9th Cir.1998).