**Marcus L. WILLIAMS, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**No. 08–479C.**

United States Court of Federal Claims.

March 25, 2009.

---

Marcus L. Williams, pro se, Jacksonville, FL.

Elizabeth Anne Speck, Civil Division, U.S. Department of Justice, Washington, D.C., for defendant. With her on the briefs were Gregory G. Katsas, Assistant Attorney General, Civil Division, and Jeanne E. Davidson, Director, and Donald E. Kinner, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C.

## OPINION AND ORDER

LETTOW, Judge.

Marcus L. Williams, a former staff sergeant of the United States Air Force, asserts several claims relating to the government's treatment of debt that remained in his account with the Army and Air Force Exchange Service ("AAFES") after his dishonorable discharge from the Air Force. In 2008, the government withheld a federal tax refund and federal tax rebate to satisfy that debt, notwithstanding Mr. Williams' claim that backpay due for accrued leave during his Air Force service should have been used for that purpose. This case is before the court on the government's motion to dismiss. The government contends that the court lacks subject matter jurisdiction over this action and that Mr. Williams has failed to state a claim upon which relief can be granted. The resolution of these contentions turns in significant part on the effect of prior litigation involving Mr. Williams in several courts including this one. *See, e.g., Williams v. United States,* 71 Fed.Cl. 194 (2006) (rejecting Mr. Williams' claims for modifications of the date and classification of his discharge). For the reasons set forth below, the government's motion is granted.

## BACKGROUND[1]

Mr. Williams enlisted in the Air Force on February 2, 1993. *Williams,* 71 Fed.Cl. at 195. After serving in the Air Force for over eight years, he was placed in military confinement and charged with violations of the

Uniform Code of Military Justice. *Id.* at 195–96. Upon trial by a general court-martial, Mr. Williams was found guilty of all charges against him, including unlawful entry of a dwelling with intent to commit an assault, assault with a deadly weapon, theft of a government-owned handgun, desertion, unlawful transport of a stolen firearm, and forging four different checks with intent to defraud. *Id.* at 196 & n. 3. He was sentenced to a dishonorable discharge, ten-year confinement, and reduction in pay grade from Staff Sergeant to Airman Basic. *Id.* at 196.

Mr. Williams' conviction was affirmed upon appeal to the United States Air Force Court of Criminal Appeals. Although the court reduced one charge from aggravated assault to assault with an unloaded weapon and consequently reduced his sentence from ten to nine years, it affirmed all other charges. *See United States v. Williams,* No. ACM 35122, 2004 WL 388773, at **8–10 (A.F.Ct.Crim. App. Feb.20, 2004). Mr. Williams' petition for review of that court's decision was denied by the United States Court of Appeals for the Armed Forces. *See Williams,* 71 Fed.Cl. at 196. Thereafter, the Air Force entered a court-martial order pertaining to Mr. Williams, and on October 1, 2004, Mr. Williams was dishonorably discharged from the Air Force. *Id.* As a result of his dishonorable discharge, he was no longer eligible for payment of his accrued leave. *Id.* at 195. At the time of his discharge, he owed a debt of $2,568.22 on a credit account with the AAFES. Compl. ¶ 13.

Mr. Williams filed an earlier complaint in this court in which he sought modifications of both the date and the classification of his discharge and additionally claimed he was entitled to compensation for the annual leave he had accrued prior to his court martial and discharge. *Williams,* 71 Fed.Cl. at 195. In granting the government's motion for judgment upon the administrative record, this court found that the Air Force had properly exercised its authority to extend Mr. Williams' term of service to the date of his

---

1. The recitations that follow do not constitute findings of fact by the court. Rather, the recited factual elements are either undisputed or are alleged and assumed to be true except where a disagreement is noted.

discharge, and that Mr. Williams had lost his entitlement to any accrued annual leave due to the fact that his discharge was dishonorable. *Id.* at 201–02.

While incarcerated at the United States Disciplinary Barracks in Fort Leavenworth, Kansas, Mr. Williams brought an action in the United States District Court for the District of Columbia, seeking a declaratory judgment that he was no longer subject to the Uniform Code of Military Justice after the expiration of his active-duty enrollment on December 29, 2001. *See Williams v. Department of the Air Force,* No. CIVA 06–0508 RCL, 2007 WL 61876, at *1 (D.D.C. Jan.4, 2007). On January 4, 2007, that court dismissed the case for lack of subject matter jurisdiction, noting that a petition for habeas corpus would be the exclusive remedy available to a federal prisoner seeking to affect the duration of his custody. *Id.,* at *2. Mr. Williams then filed such a petition in the United States District Court for the District of Kansas, claiming that the Air Force failed to follow proper procedures in extending his term of service and in preparing his discharge certificate. *See Williams v. Inch,* No. 07–3018–RDR, slip op. at 1–2 (D.Kan. Sept. 26, 2007). He also sought a restraining order and preliminary and permanent injunctive relief pertaining to the alleged inaccuracy of his military pay settlement and his separation order. *See id.* at 9. In denying Mr. Williams' habeas petition and motion for injunctive relief, the court found that Mr. Williams' term of service had been set to expire on December 28, 2001, but that the Air Force had inadvertently continued to give him pay and allowances through January 2002. *Id.* at 10.[2] The court concluded that Mr. Williams "was not due any final pay at the time of his receipt of the discharge certificate, DD Form 214, on October 25, 2004, and his discharge was complete at that time." *Id.* The court's opinion did not contain any discussion of Mr. Williams' debt to the AAFES. *See id.*

On February 29, 2008 and May 2, 2008, Mr. Williams received two letters from the Financial Management Service of the United States Treasury, notifying him that his federal tax refund and federal tax rebate would be withheld to satisfy the outstanding debt in his AAFES account. Compl. Attachs. C & D. In the present complaint, filed on July 1, 2008, Mr. Williams seeks payment of his federal tax refund and federal tax rebate. Compl. ¶¶ 12–17. Mr. Williams requests that the court permit him to use the backpay from the hours he accrued as annual leave during his service with the Air Force to satisfy these debts. *See* Compl. ¶ 11. Additionally, Mr. Williams claims that he is entitled to educational benefits based upon his service with the Air Force, and that governmental actions have deprived him of these benefits. Compl. ¶¶ 23–26.

In its motion to dismiss, the government contends that Mr. Williams has already litigated before this court the issue of whether he was entitled to backpay based on his accrued annual leave, and thus his claims should be barred under the doctrines of res judicata and collateral estoppel. Def.'s Mot. to Dismiss at 6–11 ("Def.'s Mot."). The government contends that Mr. Williams' claims regarding the application of backpay to existing debts should be dismissed under Rule 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC") because Mr. Williams never established a property interest in his forfeited backpay and because his court-martial resulted in a mandatory, not an adjudged, forfeiture, and forfeited backpay could only be applied to his debts with the AAFES if the forfeiture had been adjudged rather than mandatory. *Id.* at 11–15. Finally, the government argues that Mr. Williams' claims for payment of educational benefits are not ripe for review because he has not completed administrative proceedings regarding his educational entitlements under the GI Bill. *Id.* at 15–16.

Mr. Williams argues in his initial response, filed November 25, 2008, that the United States District Court for the District of Kansas had already found that he owed no debts to AAFES and also that the government had waived this issue by failing to submit a counterclaim in its earlier case before this court.

2. The Defense Finance and Accounting Service wrote off this overpayment due to Mr. Williams' sentence. *Williams,* No. 07–3018–RDR, slip op. at 10 n. 2.

Pl.'s Resp. to Mot. to Dismiss at 3–4 ("Pl.'s Resp."). He additionally contends that the Veterans Administration's issuance of a Certificate of Eligibility rendered him eligible to bring a claim for benefits under the GI Bill in this court. *Id.* at 4–5. In an amended response, Mr. Williams elaborates upon his reading of the district court's decision, arguing that an audit of his military financial records had revealed only an overpayment and that the government was barred by res judicata from further litigating the issue of his military debts. Pl.'s Am. Resp. at 1–3.[3]

## ANALYSIS

### A. Jurisdiction

■ As a threshold matter, before a federal court may evaluate the merits of any action, its jurisdiction must be established. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 88–89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). Because Mr. Williams seeks to invoke this court's jurisdiction, it is his burden, as plaintiff, to establish that this court has jurisdiction over the subject matter of his complaint. *McNutt v. General Motors Acceptance Corp. of Ind.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Alder Terrace, Inc. v. United States,* 161 F.3d 1372, 1377 (Fed.Cir.1998).

In ruling on a motion to dismiss under RCFC 12(b)(1) or RCFC 12(b)(6), the court must construe the allegations of the complaint in the light most favorable to the plaintiff. *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995); *see also Hamlet v. United States,* 873 F.2d 1414, 1415–16 (Fed.Cir. 1989). The court will grant a motion to dismiss under RCFC 12(b)(6) "when the plaintiff can prove no set of facts that would warrant the requested relief, when drawing all well-pleaded factual inferences in favor of the complainant." *Levine v. United States,* 453 F.3d 1348, 1350 (Fed.Cir.2006) (citing *Leider v. United States,* 301 F.3d 1290, 1295

(Fed.Cir.2002)). If the undisputed facts reveal any possible basis on which the plaintiff might prevail, the court must deny the motion. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Plaintiff need not provide "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007) (granting a motion to dismiss where plaintiffs failed to "nudge[ ] their claims across the line from conceivable to plausible").

■ This court has jurisdiction under the Tucker Act over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). However, the Tucker Act does not itself confer on a plaintiff a right to recovery; the plaintiff must also identify a substantive right that is enforceable against the United States for money damages. *See United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976).

In evaluating whether a case should be dismissed under RCFC 12(b)(1) for lack of subject matter jurisdiction, this court will not require a plaintiff to establish that he or she is entitled to invoke a relevant money-mandating statute. *Jan's Helicopter Serv., Inc. v. Federal Aviation Admin.,* 525 F.3d 1299, 1307 (Fed.Cir.2008). Rather, so long as "the plaintiff has made a nonfrivolous assertion that [he or she] is within the class of plaintiffs entitled to recover under the money-mandating source, [then] the Court of Federal Claims has jurisdiction." *Id.; see also Doe v. United States,* 463 F.3d 1314, 1324–25 (Fed.Cir.2006) (holding that plaintiff's identi-

---

3. In evaluating the government's motion to dismiss, the court will consider the additional arguments presented in plaintiff's amended response to the government's motion to dismiss. Mr. Williams' motion to amend his response was denied as moot on December 16, 2008, Docket No. 20 (Dec. 16, 2008), but the court has recon-

sidered that denial and now grants the motion to amend. In responding to Mr. Williams' motion to amend, the government addressed the new argument by Mr. Williams in his amended response proffered with his motion, and thus no additional briefing is necessary.

fication of a relevant money-mandating statute was sufficient to establish subject matter jurisdiction). It is only after the court completes this initial jurisdictional inquiry that it will then turn to the specific question of whether the facts in the plaintiff's case fit within the terms of the statute. *See Greenlee County, Ariz. v. United States,* 487 F.3d 871, 876 (Fed.Cir.2007) (citing *Fisher v. United States,* 402 F.3d 1167, 1172 (Fed.Cir. 2005) (en banc in relevant part)). If, at that point, this court concludes that plaintiff's claim "does not fit within the scope" of the grounds for relief under the money-mandating source, plaintiff will lose "on the merits [under RCFC 12(b)(6) ] for failing to state a claim on which relief can be granted." *Id.* (quoting *Fisher,* 402 F.3d at 1175–76).

In effect, Mr. Williams' claim is analogous to an illegal exaction claim, given that " 'the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum' that 'was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation.' " *Aerolineas Argentinas v. United States,* 77 F.3d 1564, 1573 (Fed.Cir.

1996) (quoting *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 372 F.2d 1002, 1007 (1967)).[4] Accordingly, this court does have subject matter jurisdiction to hear Mr. Williams' claim against the government for money damages arising out of the government's withholding of his federal tax refund and rebate to satisfy the debt due AAFES.[5]

### B. Preclusion

In arguing that Mr. Williams' claims based on his forfeited annual leave should be barred, the government develops two separate lines of attack founded on the asserted preclusive effect of Mr. Williams' prior litigation. First, the government contends that Mr. Williams' claim should be barred on res judicata grounds because his claim is "nearly identical and . . . thus based on the same set of operative facts" as an earlier claim against the government that resulted in a judgment on the merits. Def.'s Mot. at 8. Second, the government argues that the claim should be barred on collateral estoppel grounds because this court has previously resolved the issue at stake in the present suit, namely, "whether Mr. Williams is entitled to any compensation from the leave that he accrued

---

**4.** Mr. Williams argues that his tax refund and rebate were owed to him by the government in 2008, and he avers that his right to recover these monies is founded upon the Takings Clause of the Fifth Amendment. Pl.'s Am. Resp. at 3. Without doubt, the Takings Clause "is money-mandating." *Moden v. United States,* 404 F.3d 1335, 1342 (Fed.Cir.2005); *see Jan's Helicopter Serv.,* 525 F.3d at 1309.

**5.** The government's motion to dismiss largely turns upon the effect of prior litigation involving Mr. Williams. In making its arguments, the government notes that this court has "decided motions to dismiss involving issue preclusion pursuant to both RCFC 12(b)(6) and RCFC 12(b)(1)." Def.'s Mot. at 7 (citing *Corrigan v. United States,* 82 Fed.Cl. 301, 312 (2008) (invoking RCFC 12(b)(6)); *Chisolm v. United States,* 82 Fed.Cl. 185, 194 (2008) (relying upon RCFC 12(b)(1)); and *Lowe v. United States,* 79 Fed.Cl. 218, 228 (2007) (also relying upon RCFC 12(b)(1))). The decisions cited by the government that rest upon RCFC 12(b)(1), *Chisolm* and *Lowe,* seemingly overstate the jurisdictional effect of invoking collateral estoppel as a defensive matter (they do not address offensive use of collateral estoppel by a plaintiff). Because collateral estoppel pertains to issues, not claims, a judgment in a prior case may well "not preclude relitigation of all or part of the claim on which the action is brought."

*Restatement (Second) of Judgments* § 27 cmt. b (1982). In short, the concepts of merger and bar embedded in the doctrines of claim preclusion and issue preclusion, *see Restatement (Second) of Judgments* § 17 cmts. a & b; *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984), can produce instances in which a plaintiff remains free to prosecute all or part of his or her claim except as limited by an estoppel effect of a first judgment favoring a defendant. This is so especially when "there is a lack of total identity between the particular matter presented in the second action and that presented in the first." *Restatement (Second) of Judgments* § 27 cmt. c. Consequently, invocation by a party defendant of collateral estoppel, even if accepted by the court, need not be an all-or-nothing proposition, and it is more appropriate to decide a motion to dismiss involving collateral estoppel pursuant to RCFC 12(b)(6) rather than RCFC 12(b)(1). *See Corrigan,* 82 Fed.Cl. at 304 ("Affirmative defenses that have been considered under a Rule 12(b)(6) motion to dismiss include, among others, 'various types of estoppel' and 'the barring effect of res judicata and related preclusion principles.' " (quoting 5B Wright & Miller, *Federal Practice and Procedure* § 1357 at 722, 728 (3d ed.2008), and citing *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398 n. 3, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981))).

before he received a court-martial," and the court did so in a way that was necessary to that previous judgment. *Id.* at 9–10. The government concludes that because these claims and issues have already been resolved, Mr. Williams has no basis upon which to seek relief from the government's treatment of his income tax refund and rebate. *See* Def.'s Reply at 2.

### 1. Preclusive effect of the claims litigated in previous suits.

▮▮▮ Under the doctrine of res judicata, or claim preclusion, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) (citations omitted). The function of this rule is to bar a second suit where " '(1) there is identity of parties (or their privies); (2) there has been an earlier final judgment on the merits of a claim; and (3) the second claim is based on the same set of transactional facts as the first.' " *Mayer/Berkshire Corp. v. Berkshire Fashions, Inc.*, 424 F.3d 1229, 1232 (Fed.Cir. 2005) (quoting *Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1362 (Fed.Cir.2000)). One purpose of this rule is to encourage efficiency by preventing a plaintiff from splitting a claim or cause of action across two separate proceedings. *See Restatement (Second) of Judgments* §§ 24–26; *International Air Response v. United States*, 302 F.3d 1363, 1368 (Fed.Cir.2002); *Container Transp. Int'l, Inc. v. United States*, 199 Ct. Cl. 713, 468 F.2d 926, 928 (1972).

Chronologically, Mr. Williams has submitted claims against the government before this court, *see Williams v. United States*, 71 Fed.Cl. 194 (2006), the United States District Court for the District of Columbia, *see Williams v. Department of the Air Force*, No. CIVA 06–0508 RCL, 2007 WL 61876 (D.D.C. Jan.4, 2007), and the United States District Court for the District of Kansas. *See Williams v. Inch*, No. 07–3018–RDR (D.Kan. Sept. 26, 2007). The earlier case before this court resulted in a final judgment on the merits of Mr. Williams' claim that his term of service was improperly extended and his claimed entitlement to the annual leave he had accrued prior to his discharge. *Williams*, 71 Fed.Cl. at 202. The two cases before United States District Courts dealt with habeas claims submitted by Mr. Williams in relation to his court-martial; of these two cases, the action in the District Court for the District of Kansas resulted in a final judgment on the merits of Mr. Williams' habeas claim that the Air Force had improperly extended his term of service and prepared his discharge certificate. *Williams*, No. 07–3018–RDR, slip op. at 11.[6] The cases in this court and in the District Court for the District of Kansas satisfy the first two factors of the res judicata inquiry, *viz.*, the identity of the parties and entry of a final judgment.

As to the third factor, the government focuses on the earlier lawsuit before this court and contends that the operative facts underlying Mr. Williams' claims are the same even though he has "couched his [present] claim in a slightly different manner." Def.'s Reply at 2. The inquiry into whether two claims share the "same set of operative facts" is a pragmatic one, *Ammex, Inc. v. United States*, 334 F.3d 1052, 1056 (Fed.Cir.2003) (citing *Restatement (Second) of Judgments* § 24), and can also be described as an inquiry into whether the two claims are " 'based on the same, or nearly the same factual allegations.' " *Id.* (quoting *Herrmann v. Cencom Cable Assocs., Inc.*, 999 F.2d 223, 226 (7th Cir.1993)). The government asserts that Mr. Williams' earlier claim was based on "whether he was entitled to compensation for

---

**6.** The claims brought before the United States District Court for the District of Columbia cannot have preclusive effect on the claims brought by Mr. Williams in the present case because that case was dismissed for lack of subject matter jurisdiction, *see Williams*, 2007 WL 61876, at *2, and a dismissal for lack of jurisdiction does not constitute final judgment on the merits. *See Restatement (Second) of Judgments* § 20(a) ("A personal judgment for the defendant, although valid and final, does not bar action by the plaintiff on the same claim: (1)[w]hen the judgment is one of dismissal for lack of jurisdiction, for improper venue, or for non-joinder or mis -joinder of the parties ...."); *see also Killeen v. Office of Pers. Mgmt.*, 558 F.3d 1318, 1323–24 (Fed.Cir. 2009); *Media Techs. Licensing, LLC v. Upper Deck Co.*, 334 F.3d 1366, 1369–70 (Fed.Cir. 2003).

annual leave that he accrued prior to his court martial and dishonorable discharge" and that the present claim is based on "whether the annual leave he accrued can be applied toward payment for his AAFES account." Def.'s Mot. at 8–9. However, the operative facts that Mr. Williams alleges in the present case do not match those he alleged in his earlier complaint before this court. Specifically, the current complaint focuses on the facts of the government's alleged deprivation of Mr. Williams' tax refund and rebate to settle the debts in his AAFES account. Compl. ¶¶ 12–17. The prior complaint focused on the facts surrounding the Air Force's authority to extend Mr. Williams' term of service due to court-martial charges and the government's treatment of his accrued leave days. *Williams*, 71 Fed.Cl. at 198. As a result, although some of the factual allegations are similar, including Mr. Williams' allegations of his entitlement to accrued leave days, the "core" transactional facts in the two cases are different. *See Ammex*, 334 F.3d at 1056. Because the transactional facts relevant to Mr. Williams' current claim before this court are sufficiently different from those relevant to his prior claim, his current claim is not precluded on res judicata grounds.

### 2. Preclusive effect of the issues litigated in previous suits.

■ The question thus arises whether the prior lawsuits have preclusive effect on the *issues* Mr. Williams seeks to litigate in the present case. "Under the doctrine of collateral estoppel," or issue preclusion, even "when the second action is upon a different cause of action, the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action." *International Air Response*, 324 F.3d at 1378–79 (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)). Courts traditionally engage in a four-factor inquiry to determine whether to apply collateral estoppel, requiring a party to establish that: " '(1) the issue at stake is identical to the one involved in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the determination of the issue in the prior litigation [was] a critical and necessary part of the judgment in the first action; and (4) the party against whom collateral estoppel is asserted . . . had a full and fair opportunity to litigate the issue in the prior proceeding.' " *Dana v. E.S. Originals, Inc.*, 342 F.3d 1320, 1323 (Fed.Cir.2003) (quoting *Pleming v. Universal–Rundle Corp.*, 142 F.3d 1354, 1359 (11th Cir.1998)) (internal quotations omitted); *see also Jet, Inc.*, 223 F.3d at 1365–66.

The first factor requires this court to analyze " 'whether the point or question presented for determination in the subsequent action is the same as that litigated and determined in the original action.' " *Corrigan*, 82 Fed.Cl. at 307 (quoting *United States v. Moser*, 266 U.S. 236, 241, 45 S.Ct. 66, 69 L.Ed. 262 (1924)). Even if the relief in the second suit is requested on a different basis from that in the first suit, collateral estoppel can still apply where " 'the question upon which the recovery of the second demand depends has, under identical circumstances and conditions, been previously concluded by a judgment between the parties or their privies.' " *Id.* (quoting *New Orleans v. Citizens' Bank*, 167 U.S. 371, 396, 17 S.Ct. 905, 42 L.Ed. 202 (1897)). In the prior proceeding, Mr. Williams sought compensation for the unused days of annual leave he had accrued prior to his court martial and discharge. *Williams*, 71 Fed.Cl. at 199. In the present proceeding, Mr. Williams seeks to use the compensation associated with the annual leave he accrued prior to his court martial and discharge to satisfy his outstanding debts with AAFES. Compl. ¶ 11. The dispositive question upon which the recovery in both cases depends is nearly identical: whether Mr. Williams is entitled to compensation for the unpaid leave days he accrued. If Mr. Williams cannot establish an entitlement to such compensation, there is no means by which he can *use* that non-existent compensation to settle his debts with AAFES. The government concedes that Mr. Williams' accrued leave could be applied to his AAFES debt if his court-martial sentence included an adjudged forfeiture. *See* Def.'s Mot. at 13 ("As a matter of law, in order for Mr. Williams' accrued backpay to

have been applied to his AAFES debt as a result of his court-martial, his court-martial sentence must have included an *adjudged* forfeiture." (emphasis in original)). Nonetheless, as settled in the earlier proceedings before this court, Mr. Williams' dishonorable discharge pursuant to the terms of his court-martial resulted in the automatic forfeiture of all the annual leave that he had accrued. *Williams*, 71 Fed.Cl. at 202. The annual leave was eliminated by operation of law, under the mandate of 37 U.S.C. § 501(e)(1), which states that "[a] member of the ... Air Force ... who is discharged under other than honorable conditions forfeits all accrued leave to ·his credit at the time of his discharge." 37 U.S.C. § 501(e)(1). Thus, the record discloses no material alteration in the facts and circumstances surrounding this forfeiture, and the standard for identical issues has been satisfied.

■ An issue has been "actually litigated" if the parties properly raised it in their pleadings, submitted it for determination by the court, and the court determined it. *See Banner v. United States*, 238 F.3d 1348, 1354 (Fed.Cir.2001) (citing *Restatement (Second) of Judgments* § 27 cmt. d). In his previous complaint before this court, Mr. Williams properly raised and submitted the issue of whether he was wrongfully denied payment for his accrued leave days as a result of his dishonorable discharge. *Williams*, 71 Fed. Cl. at 198. In resolving this issue, this court held that Mr. Williams was not entitled to such compensation, because a statute, 37 U.S.C. § 501(e)(1), mandated the forfeiture of any accrued leave of a member of the Air Force who was dishonorably discharged. *Id.* at 202. Thus, the issue of Mr. Williams' entitlement to compensation for his unpaid leave days was actually litigated in the earlier proceeding before this court.

■ The requirement that a prior determination of an issue be "necessary" to a judgment excludes "the incidental or collateral determination of [ ] nonessential issue[s]" from having preclusive effect. *Mother's Rest., Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1571 (Fed.Cir.1983) (citations omitted). Given that in the previous litigation Mr. Williams sought payment for his accrued leave days, the resolution of whether he was entitled to that accrued leave was obviously necessary and crucial to the resulting judgment denying him compensation for that leave.

■ Finally, in determining whether Mr. Williams was given a "full and fair opportunity" to litigate the issues raised in his earlier complaint, this court evaluates " '(1) whether there were significant procedural limitations in the prior proceeding, (2) whether [Mr. Williams] had an incentive to litigate fully the issue, and (3) whether effective litigation was limited by the nature or relationship of the parties.' " *Corrigan*, 82 Fed.Cl. at 311 (quoting *Banner*, 238 F.3d at 1354; and citing *Shell Petroleum, Inc. v. United States*, 319 F.3d 1334, 1340 (Fed.Cir.2003)). Mr. Williams did not encounter any significant procedural limitations during the prior proceeding before this court, and presumably had a strong monetary incentive to litigate fully the issue of his entitlement to accrued annual leave because it was necessary to the determination of whether he would receive his allegedly past due compensation. Although he is not represented by counsel, Mr. Williams' status as a *pro se* plaintiff has not limited his ability effectively to litigate either this case or his earlier case before this court. In the earlier case, he participated in a joint preliminary status report and filed motions for reconsideration and relief from judgment; in the present case, he has filed procedural motions in addition to submissions respecting the merits. Consequently, he has had a full opportunity to litigate these issues both in the prior case and the instant one, without any hindrances to a fair and effective adjudication. *See Shell Petroleum*, 319 F.3d at 1340. Accordingly, each of the four criteria for application of the doctrine of collateral estoppel has been satisfied.

*3. Mr. Williams' argument as to the government's waiver of a compulsory counterclaim.*

■ Mr. Williams offers a separate collateral estoppel argument of his own. Specifically, Mr. Williams contends that the United States District Court for the District of Kansas "previously settled" the issue of

his debts with AAFES and "identified no outstanding governmental indebtedness [after] [p]laintiff's [d]ischarge." Pl.'s Resp. at 4. He also avers that the government's failure to raise the issue of his indebtedness as a counterclaim during the earlier case before this court, despite having the "full and fair opportunity" to do so, indicates that the government has waived this issue. *Id.* However, this waiver argument is unavailing. Under the rules relating to compulsory counterclaims, the government was under no obligation, either before the district court or during the prior proceeding before this court, to raise Mr. Williams' indebtedness as a counterclaim, because it was not a claim that "ar[ose] out of the transaction or occurrence that is the subject matter of the opposing party's claim." RCFC 13(a)(1); Fed.R.Civ.P. 13(a)(1).[7] Instead, the subject matters being litigated before the district court were Mr. Williams' habeas claim challenging the Air Force's procedures in lengthening his term of service and his claim for injunctive relief with respect to his pay settlement and separation order. *See Williams,* No. 07–3018–RDR, slip op. at 1–2. The subject matters being litigated during the prior proceeding before this court were the date and the classification of Mr. Williams' discharge and his alleged entitlement to payments for his unused annual leave. *See Williams,* 71 Fed.Cl. at 198. Neither the district court nor this court analyzed or became concerned with debts allegedly owed by Mr. Williams to the government. Thus the government was under no obligation to raise the issue of those

debts during any of Mr. Williams' prior proceedings.[8]

### 4. Synopsis.

In sum, the court concludes that the doctrine of collateral estoppel applies to preclude Mr. Williams from litigating whether he is entitled to any compensation for the accrued leave he accumulated before he received a court-martial.

### C. The government's motion to dismiss for failure to state a claim

### 1. Resolution of AAFES debts.

Mr. Williams' claim seeking compensation for what he describes as the government's "illegal [t]akings of his federal monies" to settle his AAFES debt, Compl. ¶ 16, has two parts. The first part is premised on the argument that the Department of Defense did in fact apply his forfeited annual leave towards the resolution of the debts on his AAFES account. Compl. ¶¶ 8–9, 11. The second part is premised on the argument that the government illegally took his income tax rebate and refund as an offset to settle his AAFES debt. Compl. ¶¶ 12–16. The government argues that "Mr. Williams ... has not established that he had a cognizable property interest in his forfeited backpay" and that "as a matter of law, his accrued backpay could not have been applied to his AAFES debt." Def.'s Mot. at 11.

■ As previously discussed, the elimination of Mr. Williams' annual leave was auto-

---

**7.** RCFC 13(a)(1) is identical to Fed.R.Civ.P. 13(a)(1).

**8.** In addition, in the prior litigation before this court, the compulsory-counterclaim requirement of RCFC 13(a) never became relevant because of the procedural posture of that litigation. Defendant never filed, nor was required to file, an answer; the prior action was decided upon the basis of defendant's motion to dismiss and accompanying motion for judgment on the administrative record plus Mr. Williams' cross-motion for judgment on the administrative record. *See Williams,* 71 Fed.Cl. at 195. Consequently, the situation in the prior action was akin to that explained in *Horn & Hardart Co. v. National Rail Passenger Corp.,* 843 F.2d 546 (D.C.Cir.1988):

> For a counterclaim to be compulsory, [the defendant] would have to have been obliged to

submit responsive pleadings, *see Restatement (Second) of Judgments* § 21 (defendant who prevails on counterclaim is treated as plaintiff and rules of merger apply). Instead, [defendant] merely filed a motion to dismiss, which under Fed.R.Civ.P. 12(b)(6) is not such a responsive pleading. Summary disposition was entered before [defendant] was required to submit an answer. *See United States v. Snider,* 779 F.2d 1151, 1157 (6th Cir.1985) (no bar to second suit where motion to dismiss settled earlier case without pleadings). Where a defendant neither asserts, nor is required to assert, a counterclaim, *Restatement (Second) of Judgments* § 22 explains that the previously unlitigated issues will not later be estopped by the earlier action. *See, e.g., County Fuel Co. v. Equitable Bank Corp.,* 832 F.2d 290, 292 (4th Cir.1987).

*Id.* at 549.

matic, by operation of a statute, and not the result of an adjudged forfeiture. Mr. Williams cites to Financial Management Regulations ("FMR") issued by the Department of Defense in arguing that his accrued leave payments were used to satisfy his AAFES debt. Compl. ¶¶ 7–9. This contention is unavailing, however, as the regulations do not permit *mandatory* forfeitures to be used to satisfy government debts. *See* FMR 7000.14–R, Vol. 7C, Ch. 3, § 0303.

The first of these regulations states that "[p]ayments for accrued leave may be used to satisfy debts to the U.S. [g]overnment without restriction." FMR 7000.14–R, Vol. 7A, Ch. 35, § 350104. However, the issue of whether Mr. Williams was and is entitled to any payments for accrued leave was resolved by this court's earlier judgment, and for the reasons established above, Mr. Williams is precluded from relitigating that issue here.

The purpose of the second set of regulations cited by Mr. Williams is to permit "the transfer of certain forfeitures and fines, as a result of courts-martial, nonjudicial punishment, and desertion to the Armed Forces Retirement Home Trust Fund ['AFRHTF']." FMR 7000.14–R, Vol. 7C, Ch. 3, § 0301 (describing purpose of chapter). The specific regulation cited by Mr. Williams allows for the transfer of forfeitures not only to the trust fund but also towards "unsatisfied indebtedness at [the] date of separation." *Id.* at § 030403(B). If the amount of the forfeiture is greater than the amount of the debt, then the remaining forfeiture after the debt has been satisfied is credited to the trust fund. *Id.* Mr. Williams contends that under these regulations, "the Defense Finance [a]nd Accounting Service applied [his] forfeited accrued leave payment to satisfy his [AAFES] delinquent debt." Compl. ¶ 9. However, the scope of the transfers permitted under Chapter 3 of Volume 7C is limited to "forfeitures and fines *adjudged* by courts-martial." FMR 7000.14–R, Vol. 7C, Ch. 35, § 0303 (emphasis added) (describing general policy behind transferring forfeitures to the military trust fund).

One prominent difference between an adjudged forfeiture and a mandatory forfeiture is that adjudged forfeitures may be included as part of the punishment of a person found guilty by a court-martial, *see* Rule 1003(b) of the Rules for Courts–Martial, Manual for Courts–Martial, United States (2000 ed.) (providing an exclusive list of the kinds of punishments that may be imposed by a court-martial),[9] whereas mandatory forfeitures are not part of the court-martial sentence itself, but instead arise as collateral consequences of the sentence. *See* Article 58b(a), Uniform Code of Military Justice, 10 U.S.C. § 858b ("A court-martial sentence ... shall result in the forfeiture of pay, or of pay and allowances, due that member during any period of confinement or parole."); *United States v. Emminizer,* 56 M.J. 441, 442 (U.S. Armed Forces 2002) (comparing forfeitures adjudged by a court-martial with forfeitures mandatorily triggered by a sentence of confinement). On appeal from his court-martial, Mr. Williams received a final sentence of a reduction in pay grade to the E–1 level, confinement for nine years, and a dishonorable discharge. *Williams,* No. ACM 35122, 2004 WL 388773, at **9–10. This sentence did not include any adjudged forfeitures. Because the regulations governing the transfer of forfeitures only allow for the transfer of adjudged forfeitures, they are not applicable to Mr. Williams' present case.

Furthermore, although Mr. Williams alleges that the government "took" his income tax rebate and refund as an offset to settle his AAFES debt, Compl. ¶ 16, he has not satisfied the requirements for bringing a claim under the Takings Clause of the Fifth Amendment. The Takings Clause provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. One predicate for a Takings Clause claim is to "establish[ ] a property interest for purposes of the Fifth Amendment." *Members of the Peanut Quota Holders Ass'n v. United States,* 421 F.3d 1323, 1330 (Fed.Cir.2005). Neither a government salary nor military benefits, however, are cognizable property interests for pur-

---

**9.** The 2000 edition of the Manual for Courts–Martial is cited here because it was the edition governing the resolution of Mr. Williams' court-martial in 2002.

poses of the Takings Clause. *See Adams v. United States*, 391 F.3d 1212, 1225 (Fed.Cir. 2004) ("[A] statutory right to be paid money, at least in the context of federal employee compensation and benefit entitlement statutes, is not a property interest for purposes of the Takings Clause."); *Schism v. United States*, 316 F.3d 1259, 1268 (Fed.Cir.2002) (observing that military benefits "depend upon an exercise of legislative grace, not upon principles of contract, property, or 'takings' law"). Because his claimed entitlement to his accrued annual leave is not a cognizable property interest, Mr. Williams cannot maintain a claim under the Takings Clause.

Accordingly, the court finds that Mr. Williams has failed to state a claim upon which relief can be granted regarding either his contention that the government applied his forfeited annual leave towards the resolution of his AAFES debt or his contention that the government illegally took his income tax rebate and refund to settle his AAFES debt.

### 2. Deprivation of educational benefits.

■ Mr. Williams also brings a claim that the government's actions have deprived him of veterans' educational benefits to which he is entitled based upon his service with the Air Force. Compl. ¶¶ 23–26. He alleges that he has suffered a statutory forfeiture of these education benefits and that the government has defaulted on his "bilateral educational benefit contract and is responsible for the maximum guaranteed entitlement amount of $39636.00." Compl. ¶¶ 25–26. The government contends that Mr. Williams has not properly stated a claim in this regard, because he has failed to demonstrate that he exhausted all administrative remedies prior to filing his complaint in this court. Def.'s Mot. at 15–16; Def.'s Reply at 5–6. However, as will appear from the brief discussion below, Mr. Williams' claim for educational benefits is unavailing for an even more fundamental reason, *viz.*, this court lacks subject matter jurisdiction to consider claims for veterans' benefits.

To bring a claim for benefits, Mr. Williams would need to go through a series of steps. First, he would apply for his educational benefits through the Veterans Administration. *See* 38 U.S.C. § 511(a) ("The Secretary [of Veterans Affairs] shall decide all questions ... necessary to a decision ... under a law that affects the provision of benefits by the Secretary to veterans."). Then, if his application were not approved, he would need to appeal the denial of his application to the Board of Veterans Appeals. *See* 38 U.S.C. § 7104. Next, if the Board of Veterans Appeals did not decide the appeal in his favor, he could appeal the denial to the Court of Veterans Appeals. *See* 38 U.S.C. § 7252 ("The Court of Appeals for Veterans Claim[s] shall have exclusive jurisdiction to review decisions of the Board of Veterans' Appeals."). Thereafter, appeals from that court are within the exclusive jurisdiction of the Court of Appeals for the Federal Circuit. *See* 38 U.S.C. § 7292(a).[10] This court has no role in adjudicating a veteran's entitlement to educational benefits. *See Jackson v. United States*, 242 Fed.Appx. 698, 700–01 (Fed.Cir. 2007); *Janaskie v. United States*, 77 Fed.Cl. 654, 657–58 (2007).

### CONCLUSION

For the foregoing reasons, the government's motion to dismiss is GRANTED, and this case shall be dismissed for failure to state a claim as to Mr. Williams' asserted entitlement to credit for accrued leave against his AAFES debt and for lack of subject matter jurisdiction as to his claim for veterans' educational benefits. The Clerk shall enter judgment accordingly. No costs.

It is so ORDERED.

---

**10.** Review in the Federal Circuit is limited to "relevant questions of law, including interpreting constitutional and statutory provisions." 38 U.S.C. § 7292(d)(1).