UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD
2017 MSPB 4

Docket No. NY-315H-13-0277-I-1

**Robin Sabio,**

**Appellant,**

**v.**

**Department of Veterans Affairs,**

**Agency.**

January 6, 2017

<u>Charles Wilson</u>, Esquire, and <u>Tony Fisher</u>, Esquire, Buffalo, New York,
    for the appellant.

<u>Jeffrey L. Whiting</u>, Esquire, Buffalo, New York, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**OPINION AND ORDER**

¶1       The appellant has filed a petition for review of the initial decision, which denied her affirmative defense of race-based discrimination in connection with the agency's rescinded termination action.  For the reasons discussed below, we DENY the petition for review and AFFIRM the initial decision, as MODIFIED by this Opinion and Order.  We take this opportunity to clarify when an administrative judge must hold a hearing on a discrimination claim raised in connection with an otherwise appealable action and clarify the administrative judge's analysis of the appellant's race discrimination claim consistent with *Savage v. Department of the Army*, <u>122 M.S.P.R. 612</u> (2015).

## BACKGROUND

¶2      Effective June 17, 2012, the appellant began a 2-year term appointment with the agency as a GS-7 Veterans Claims Examiner (VCE) on the Veterans Retraining Assistance Program (VRAP) team. Initial Appeal File (IAF), Tab 8 at 9. Her competitive‑service appointment was subject to a 1-year probationary period. *Id.* On May 31, 2013, the agency notified her that she would be terminated from her position during her probationary period due to unsatisfactory performance. *Id.* at 11. The agency processed her probationary termination effective June 14, 2013, at 4:30 p.m. *Id.* at 11, 21. She appealed her termination to the Board. IAF, Tab 1. Subsequently, the agency determined that the appellant had completed her probationary period just before the effective date and time of her termination. IAF, Tab 18 at 4. Because the agency had improperly terminated the appellant without providing her the notice and opportunity to respond that is due a tenured Federal employee, the agency agreed to rescind the removal notice, return the appellant to her term position, and restore her to the status quo ante. *Id.* at 4-5; IAF, Tab 21. The appellant was reinstated to her position, IAF, Tab 25 at 18, and remained employed for the remainder of the 2‑year term, IAF, Tab 38 at 1.

¶3      Although the agency rescinded her termination, the appellant continued pursuing her discrimination claims with the Board.[1] In a November 8, 2013 order and notice of hearing and prehearing conference, the administrative judge scheduled the hearing and prehearing conference and ordered the parties to file

---

[1] When, as here, an appellant has an outstanding claim for compensatory damages based on discrimination, the agency's complete rescission of the action appealed does not afford her all of the relief available before the Board and the appeal is not moot. *Hess v. U.S. Postal Service*, 123 M.S.P.R. 183, ¶¶ 8-9, 19-20 (2016); *Wrighten v. Office of Personnel Management*, 89 M.S.P.R. 163, ¶ 9 (2001).

their prehearing submissions. IAF, Tab 22. In a November 22, 2013 affirmative defenses order, the administrative judge directed the appellant to clarify her affirmative defenses, including her hostile work environment and discrimination claims. IAF, Tab 24. The appellant did not respond to the affirmative defenses order and did not file her prehearing submission. IAF, Tab 29 at 2. On November 26, 2013, the agency served discovery on the appellant. IAF, Tab 26 at 8-21. The appellant failed to respond to the agency's discovery requests within the 20-day response period, and the agency filed a motion to dismiss the appeal and/or for sanctions. *Id.* at 4-6. The appellant did not respond to the agency's motion.

¶4 On January 17, 2014, the administrative judge denied the agency's motion to dismiss and for sanctions, ordered the appellant to respond to the agency's discovery requests within 10 days, and ordered her to show cause within 10 days why appropriate sanctions should not be imposed for her failure to comply with the orders regarding her affirmative defenses and prehearing submissions. IAF, Tab 29. On or about February 1, 2014, the appellant, through counsel, submitted an untimely response to the January 17, 2014 order, asserting that she had been overwhelmed with moving, a divorce proceeding, and her son's health issues. IAF, Tab 33 at 1-2. She further asserted that she had not had time to work on the agency's discovery requests, but that her counsel "eventually responded" to them. *Id.* The appellant did not explain why she failed to respond to the affirmative defenses order or why she failed to submit her prehearing submissions pursuant to the order and notice of hearing and prehearing conference. *Id.* at 1-4.

¶5 On May 18, 2015, the administrative judge issued an order imposing sanctions against the appellant for failing to comply with his hearing and prehearing conference order and affirmative defenses order. IAF, Tab 43. The administrative judge found that the appellant's response to the show cause order was nonresponsive to the question of why she had failed to respond to his other orders and that, even assuming that her personal circumstances caused her failure

to comply with the orders, her explanation was unpersuasive. *Id.* at 2. Accordingly, the administrative judge sanctioned the appellant by: (1) drawing an inference in favor of the agency that, even assuming a motive to discriminate, it would have taken the same adverse action against the appellant due to her poor performance; and (2) limiting the appellant's presentation of her case to her own testimony, if she chose to testify, and to information and evidence already in the record, including her responses to the agency's discovery requests. *Id.* at 3-4.

¶6   The same day, the administrative judge also issued an order on the appellant's affirmative defenses. IAF, Tab 44. Although the appellant had not responded to the affirmative defenses order, the administrative judge considered her responses to the agency's discovery requests, which had been entered into the record by the agency. *Id.* at 2-3; IAF, Tab 32 at 24-32. Based on the information in her discovery responses, the administrative judge found that the appellant had failed to make a nonfrivolous allegation that she was subjected to a hostile work environment that resulted in her unacceptable performance and therefore struck her hostile work environment affirmative defense. IAF, Tab 44 at 2-3. The administrative judge found, however, that the appellant's responses to the discovery requests sufficiently alleged discrimination based on race and notified her of her burden of proof to establish that affirmative defense.[2] *Id.* at 3-5.

---

[2] The administrative judge notified the appellant of her burden of proof to establish her affirmative defense of race-based discrimination pursuant to the burden-shifting method established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). IAF, Tab 44 at 3-5. After the administrative judge issued this order, the Board issued its decision in *Savage*, 122 M.S.P.R. 612, ¶¶ 46, 50, which held that the burden-shifting framework in *McDonnell Douglas* has no application to Board proceedings. Although the appellant was not notified of the correct standard and burden of proof applicable to her affirmative defense before the hearing, the initial decision set forth the correct standard under *Savage*, thereby providing her with notice and an opportunity to meet this burden on review. IAF, Tab 109, Initial Decision at 5-9; *see Easterling v. U.S. Postal Service*, 110 M.S.P.R. 41, ¶ 11 (2008).

¶7 The hearing was held over the course of 4 days on August 18, September 10, 11, and 24, 2015. IAF, Tab 109, Initial Decision (ID) at 5. After the first day of the hearing, the appellant submitted an affidavit by a former coworker, M.L., alleging disparate treatment of African American females on the VRAP team.[3] IAF, Tab 80. The agency moved to strike M.L.'s affidavit from the record and for sanctions against the appellant for violating the prior order limiting her to her own testimony and to information already in the record. IAF, Tab 83. The agency also provided a copy of M.L.'s resignation letter and an affidavit executed by M.L. in connection with her own Board appeal, in which she attested that "[d]iscrimination did not cause [her] to resign." *Id.* at 10-12, 14. During the hearing on September 10, 2015, the administrative judge struck M.L.'s affidavit from the record pursuant to the sanctions order and denied the agency's motion for further sanctions. Hearing Compact Disc (HCD) (Sept. 10, 2015).

¶8 On September 23, 2015, the appellant moved "to admit the affidavit and documents of [M.L.] submitted in compliance with 5 C.F.R. § 1201.34 for a permissive [i]ntervenor" and requested that M.L. "or any other of the African American female non supervisory employees in the VRAP program during [the appellant's] employment be granted permission to file a brief as an *amicus curiae.*" IAF, Tab 89 at 5. During the last day of the hearing, the administrative judge denied the appellant's motion. HCD (Sept. 24, 2015). The appellant noted her objection for the record. *Id.* After the hearing, both parties filed closing statements, IAF, Tabs 94, 100, and the appellant moved to strike the agency's documents pertaining to M.L. and the agency's closing brief, IAF, Tabs 91, 102.

---

[3] The appellant's counsel represented M.L. in her separate Board appeal. Hearing Compact Disc (Sept. 10, 2015).

¶9	In an initial decision, the administrative judge found that the appellant failed to show by preponderant evidence[4] that her rescinded termination was motivated in any part by race discrimination and that she failed to show that the agency's reasons in support of its action were a mere pretext for race discrimination. ID at 25. Accordingly, the administrative judge denied the appellant's affirmative defense. *Id.* The administrative judge did not rule on the appellant's motion to strike the documents regarding M.L.'s Board appeal or her motion to strike the agency's closing brief.

¶10	The appellant has filed a petition for review of the initial decision and a supplement to her petition for review challenging all of the administrative judge's findings and rulings. Petition for Review (PFR) File, Tabs 1, 3. The agency has responded in opposition to the appellant's petition for review, and the appellant has replied to the agency's opposition. PFR File, Tabs 4, 6. The appellant also has filed motions to submit two additional pleadings, and the agency has responded in opposition. PFR File, Tabs 7-8, 10.

## ANALYSIS

The appellant's motions to submit additional pleadings are denied.

¶11	After submitting her petition for review, a supplemental petition for review, and a reply to the agency's response to her petition for review, the appellant requested leave to file: (1) a motion to strike the agency's response to her petition for review on the ground that it does not comply with the Board's regulations; and (2) a supplemental pleading to "correct mistakes, address insufficiency of evidence, as well as answer a few points in the non-compliant Agency Response that may not have been addressed." PFR File, Tabs 7-8.

---

[4] A preponderance of the evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.4(q).

¶12     The Board's regulations specify that a response to a petition for review is limited to 30 pages or 7,500 words, whichever is less, and that pleadings must be double spaced.  5 C.F.R. § 1201.114(h).  Although the agency's response, which is single spaced, does not technically comply with the Board's regulations, it substantially complies with them because it does not exceed the 7,500-word limit.  PFR File, Tab 4 at 4-14.  Thus, we deny the appellant's request to file a motion to strike the agency's response.

¶13     We also deny the appellant's request for leave to submit a supplemental pleading to allow her to "correct mistakes, address insufficiency of evidence, as well as answer a few points in the non-compliant Agency Response that may not have been addressed" because she has failed to show that this information is new and material or that it was unavailable before the record closed.  PFR File, Tab 8 at 4; *see* 5 C.F.R. § 1201.114(k).  Moreover, the appellant already has been afforded ample opportunity to present her arguments on review; she has filed a petition for review, a supplemental petition for review, and a reply to the agency's response, and received a 10-day extension to file her supplemental petition for review.  PFR File, Tabs 1-3, 6.  We further find unavailing the appellant's contention that a supplemental pleading is necessary to address the agency's "non-compliant" response because, as discussed above, the agency's response substantially complies with the Board's regulations.

The appellant's motions to strike documents from the record below and to strike the agency's closing brief are denied.

¶14     As stated above, the administrative judge did not rule on the appellant's motion to strike the agency's submission of M.L.'s resignation letter and her affidavit regarding her resignation or the appellant's motion to strike the agency's closing brief.  We have considered them here and, for the reasons discussed below, deny the appellant's motions.  Because we deny the appellant's motions, the administrative judge's failure to rule on them below did not prejudice the

appellant's substantive rights.  *See Panter v. Department of the Air Force*, [22 M.S.P.R. 281](), 282 (1984).

¶15        In response to the appellant's submission of M.L.'s affidavit below, the agency filed a copy of M.L.'s resignation letter and an affidavit executed by M.L. in connection with her own Board appeal.  IAF, Tab 83.  The appellant moved to strike these documents and for sanctions because "the inclusion of this information in [the instant case] does not allow [M.L.] to possess a clean official record," as agreed to in her settlement agreement.  IAF, Tab 91 at 5.  The agency opposed the appellant's motion.[5]  IAF, Tab 106.  We deny the appellant's motion to strike M.L.'s resignation letter and affidavit because the appellant's contentions regarding the terms of a settlement agreement in another appeal, even if true, provide no basis for striking the agency's submission in this appeal.

¶16        The appellant also moved to strike the agency's closing brief, arguing that the agency should not be permitted to submit a "Post Closing Brief as a Substitute for a Closing Argument or Statement" and because she "feels that the brief . . . does not summarize the case, the law or what occurred in the hearing."  IAF, Tab 102 at 4.  The administrative judge allowed the parties to submit closing arguments after the hearing, and the agency timely filed its closing submission, titled "Post Hearing Brief," which set forth the procedural history of this appeal, the undisputed facts, and the agency's legal arguments.  HCD (Sept. 24, 2015); IAF, Tab 94.  We find no merit to the appellant's assertion that the agency's

---

[5] The appellant appears to object to the agency's October 9, 2015 opposition to her motion to strike and for sanctions because it was submitted after the close of the record on October 7, 2015.  IAF, Tab 107 at 4.  However, the Board will accept a submission after the close of the record if "[i]t is in rebuttal to new evidence or argument submitted by the other party just before the record closed." [5 C.F.R. § 1201.59](c)(c)(2).  Generally, unless the administrative judge provides otherwise, "any objection to a written motion must be filed within 10 days from the date of service of the motion." [5 C.F.R. § 1201.55](b).  Thus, because the appellant's motion to strike was filed only 5 days before the close of the record, the agency's rebuttal, filed 7 days later, is permissible.

closing submission somehow exceeds the scope of the closing arguments approved by the administrative judge or that it should be stricken because the appellant disagrees with its contents. Accordingly, we deny the appellant's motion to strike the agency's closing brief.

The administrative judge properly denied the appellant's motion to admit M.L.'s affidavit and to allow permissive intervenors in this appeal.

¶17  As stated above, the appellant submitted a motion to admit M.L.'s affidavit regarding disparate treatment in the VRAP and other documents as a "permissive [i]ntervenor" and requested permission for M.L. and other "African American female non supervisory employees in the VRAP program during [the appellant's] employment" to file amicus briefs. IAF, Tab 89 at 5. The administrative judge denied the appellant's motion. HCD (Sept. 24, 2015). On review, the appellant moves that the Board reverse the administrative judge's ruling and admit M.L.'s affidavit and "documents of an African American employee submitted in compliance with 5 C.F.R. § 1201.34 for a permissive intervener [sic]." PFR File, Tab 3 at 25.

¶18  We find no basis to disturb the administrative judge's decision to strike M.L.'s affidavit, which the appellant did not submit until after the first day of the hearing. IAF, Tab 80. Pursuant to the sanctions order, the appellant was limited in the presentation of her case to her own testimony and to information already in the record. IAF, Tab 43. The appellant has not challenged the sanctions order, and we discern no basis to find that the administrative judge abused his discretion in imposing the sanctions after the appellant's repeated failures to comply with his orders regarding her affirmative defenses and prehearing submissions. *See Smets v. Department of the Navy*, 117 M.S.P.R. 164, ¶ 11 (2011) (stating that imposing sanctions is a matter within the administrative judge's sound discretion and that, absent a showing that such discretion has been abused, the sanctions decision will not be found to constitute reversible error), *aff'd*, 498 F. App'x 1 (Fed. Cir. 2012).

¶19     We also find no merit to the appellant's contention that M.L.'s affidavit should be admitted in the instant appeal because M.L. is or should be a permissive intervenor.  PFR File, Tab 3 at 25.  "'Permissive' intervenors are those parties who may be permitted to participate if the proceeding will affect them directly and if intervention is otherwise appropriate under law."  5 C.F.R. § 1201.34(a).  Permission to intervene will be granted "where the requester will be affected directly by the outcome of the proceeding."  5 C.F.R. § 1201.34(c)(2). Here, M.L. has not requested to intervene in the instant matter and, even if she did, she could not show that she would be "directly affected" by the outcome of this appeal.  5 C.F.R. § 1201.34(c)(2).  As such, the administrative judge properly denied the appellant's request to permit M.L. to intervene in this appeal.

The appellant is not entitled to a hearing on her facially deficient hostile work environment affirmative defense.

¶20     In her initial appeal, the appellant appeared to raise a hostile work environment affirmative defense, alleging that she witnessed "inappropriate touching" and heard "joking, laughing, giggling and intimate conversations" on a number of occasions between a married Senior VCE and another married Senior VCE, who referred to herself as an "Office Wife."  IAF, Tab 1 at 5.  According to the appellant, "[w]itnessing this unexpected, inappropriate and at times offensive behavior . . . made it extremely difficult to work and carry out assignments, since this was a distraction many times throughout the day, every day."  *Id.*

¶21     In the order directing the appellant to clarify her affirmative defenses, the administrative judge noted that the appellant had not alleged that she had been personally harassed on the basis of her sex, but rather that she was subjected to a hostile work environment when she observed inappropriate behavior of a sexual nature between a Senior VCE and at least one other female employee.  IAF, Tab 24 at 7.  The administrative judge stated that it was "unclear whether the appellant's claim is cognizable under the law" and ordered her to make a nonfrivolous allegation of a hostile work environment based on sex

discrimination by showing that the alleged conduct directed at others had the purpose or effect of unreasonably interfering with her work performance or of creating an intimidating, hostile, or offensive working environment. *Id.* at 7-8. As noted above, however, the appellant did not respond to the affirmative defenses order, and the administrative judge ultimately struck her hostile work environment affirmative defense. IAF, Tab 44 at 2-3.

¶22    Over a month later, the appellant notified the administrative judge that she objected to the ruling, arguing that an "ongoing display and environment of viewing sexual escapades in the workplace" created a hostile work environment that affected her performance. IAF, Tab 51 at 3. She stated that the Senior VCEs "carried on a sexual liaison on site and in full view of the people that were being trained" and that "changes [in one's performance] can and do occur when a party (Appellant) witnesses that there is a reward to be obtained by an individual who has an inappropriate sexual relationship; especially if these observations occur during training." *Id.* In subsequent pleadings, the appellant reiterated her contentions that witnessing "a pervasive atmosphere of sexual escapades and relationships occurring" created a hostile work environment that affected her performance. IAF, Tab 53 at 4-5, Tab 55 at 10, 13.

¶23    The administrative judge considered the appellant's objection to his ruling to strike her hostile work environment affirmative defense as a request for reconsideration of the ruling, which he denied during a status conference. IAF, Tabs 54, 68. The appellant noted her objection for the record. IAF, Tab 68. On review, the appellant contends, without supporting argument, that the administrative judge erred in striking her affirmative defense of a hostile work environment based on sex prior to the hearing. PFR File, Tab 3 at 25, Tab 6 at 7.

¶24    Sections 7701(a)(1) and 7702(a)(1) of title 5 provide that an appellant is entitled to a hearing in any appeal brought before the Board under any law, rule, or regulation, and that she is entitled to have the Board decide the merits of any claim of statutorily prohibited discrimination raised in such an appeal. 5 U.S.C.

§§ 7701(a)(1), 7702(a)(1).  Interpreting these provisions and the legislative history of the Civil Service Reform Act of 1978, the U.S. Court of Appeals for the Federal Circuit held that the Board lacks the authority to grant summary judgment and that an appellant's right to a hearing is not contingent on her showing that there are no genuine and material issues of fact in dispute.  *Crispin v. Department of Commerce*, 732 F.2d 919, 922 (Fed. Cir. 1984) (quoting H.R. Rep. No. 95‑1717, at 137 (1978) (Conf. Rep.), *reprinted in* 1978 U.S.C.C.A.N. 2860, 2871).  However, the issue of when an administrative judge must hold a hearing on a discrimination claim raised in connection with an otherwise appealable action has a complex history before the Board.  We take this opportunity to clarify this issue.

¶25    In *Crawford v. U.S. Postal Service*, 70 M.S.P.R. 416, 423-24 (1996), the Board held that an administrative judge may strike a discrimination claim before a hearing if the appellant fails to raise nonfrivolous factual allegations that, if proven, could establish a prima facie case of discrimination.  In *Currier v. U.S. Postal Service*, 79 M.S.P.R. 177, 180-82 (1998), the Board overruled *Crawford* and found instead that, when an appellant who claims discrimination has requested a hearing, the administrative judge may not find against the appellant on the discrimination claim without holding such a hearing.  In *Browder v. Department of the Navy*, 81 M.S.P.R. 71, ¶ 6 (1999), *aff'd*, 250 F.3d 763 (Fed. Cir. 2000) (Table), the Board clarified its holding in *Currier*, explaining that, if an appellant makes a claim of prohibited discrimination in connection with an otherwise appealable action, the appellant must be afforded the opportunity for a hearing and a decision on the merits of the claim.  *Browder* further held, however, that striking a claim because an appellant did not allege facts that, if proven, would establish a prima facie case of discrimination was not harmful error because the appellant had failed to allege a cognizable claim of statutorily prohibited discrimination.  *Id.*, ¶¶ 7-8.  Subsequently, in *Redd v. U.S. Postal Service*, 101 M.S.P.R. 182, ¶¶ 5, 13 (2006) (citing *Browder*, 81 M.S.P.R. 71,

¶¶ 6-8), the Board overruled *Currier*, holding that an appellant does not have an unconditional right to a hearing on a discrimination claim and that, when an appellant's allegations in support of a discrimination claim are deficient as a matter of law, the claim may be disposed of without a hearing. *Redd* also declined to follow *Crispin* insofar as it held that the Board may not render summary judgment in adjudicating discrimination claims because it concluded that the Federal Circuit has no authority to review Board findings on the substance of discrimination law, and thus, no authority to review the Board's procedures for adjudicating such claims. *Id.*, ¶ 12. Recently, in *Savage*, the Board overruled *Redd* to the extent it declined to follow *Crispin* and reaffirmed *Crispin*'s holding that the Board's procedures do not provide for summary judgment. *Savage*, 122 M.S.P.R. 612, ¶ 46 & n.10 (citing *Crispin*, 732 F.2d at 922).

¶26        Although *Savage* overruled *Redd* to the extent that it erroneously assumed that the Board's procedures for deciding discrimination claims were a matter of substantive discrimination law, it did not overrule *Redd*'s holding that, when an appellant's allegations in support of a discrimination claim are deficient as a matter of law, the discrimination claim may be disposed of without a hearing. *See Savage*, 122 M.S.P.R. 612, ¶ 46 n.10; *Redd*, 101 M.S.P.R. 182, ¶ 13. This distinction is made less clear, however, because *Redd* improperly conflates a post‑discovery grant of summary judgment with a pre-discovery dismissal for failure to state a claim. *Redd*, 101 M.S.P.R. 182, ¶ 13. Specifically, in discussing when a deficient claim may be dismissed without a hearing, *Redd* states:

> The Board has held that, notwithstanding *Currier*, when an appellant's allegations in support of a discrimination claim are deficient as a matter of law, the claim may be disposed of without a hearing. [*Browder*, 81 M.S.P.R. 71, ¶¶ 6-8]. We now hold that when the appellant's factual allegations in support of a discrimination claim, taken as true, could not support an inference that the agency's action was a pretext for discrimination, the [administrative judge] is

> not required to permit the appellant to attempt to prove his allegations at an evidentiary hearing. In other words, when there is no genuine dispute of material fact regarding discrimination, an evidentiary hearing on discrimination need not be conducted.

*Id*. The first two sentences in the foregoing paragraph concern dismissal for failure to state a claim, whereas the last sentence incorrectly equates dismissal for failure to state a claim to a grant of summary judgment. This is problematic because a dismissal without a hearing when the appellant's factual allegations in support of a discrimination claim, taken as true, could not support an inference that the agency's action was discriminatory is not the same thing as a post‑discovery judgment without a hearing on the basis that there is no genuine dispute of material fact and the nonmoving party is entitled to judgment as a matter of law.

¶27        The Federal Rules of Civil Procedure, which are not controlling but may be used as a general guide in proceedings before the Board, *Social Security Administration v. Long*, 113 M.S.P.R. 190, ¶ 10 (2010), *aff'd*, 635 F.3d 526 (Fed. Cir. 2011), underscore the difference between summary judgment and dismissal for failure to state claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6); Fed. R. Civ. P. 56(a). "Dismissal for failure to state a claim under Rule 12(b)(6) is proper only when a [party] can prove no set of facts in support of [his] claim which would entitle him to relief." *Leider v. United States*, 301 F.3d 1290, 1295 (Fed. Cir. 2002) (internal quotations omitted). In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must assume that all well-pled factual allegations are true and draw all reasonable inferences in favor of the nonmoving party. *Leider*, 301 F.3d at 1295. On the other hand, the court will grant summary judgment pursuant to Rule 56(a) when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247‑48 (1986). A factual dispute is "genuine" when there is sufficient evidence supporting the contention of the party seeking

an evidentiary hearing for the trier of fact to resolve the dispute in that party's favor. *Anderson*, 477 U.S. at 248-49.

¶28    Thus, contrary to the statement in *Redd*, an administrative judge may not dispose of a discrimination claim without a hearing when there is no genuine dispute of material fact regarding discrimination because to do so would be an improper grant of summary judgment.  *See Redd*, 101 M.S.P.R. 182, ¶ 13. However, *Redd* is correct that an administrative judge is not required to hold a hearing on a discrimination claim raised in connection with an otherwise appealable action when the appellant's factual allegations in support of a discrimination claim, taken as true, could not support an inference that the agency's action was discriminatory.  *Id.*  The current state of Board law on this issue is most accurately summarized in *Browder*, which was cited in *Redd* and which held that, when an appellant's allegations in support of a discrimination claim are deficient as a matter of law, the claim may be disposed of without a hearing.[6] *Redd*, 101 M.S.P.R. 182, ¶ 13; *Browder*, 81 M.S.P.R. 71, ¶¶ 6‑8.

¶29    As recently articulated in *Hess v. U.S. Postal Service*, 123 M.S.P.R. 183, ¶¶ 9-10 (2016), if an appellant states a cognizable claim of statutorily prohibited discrimination in connection with an otherwise appealable action, the Board must decide those discrimination claims only after the record is complete, in accordance with its appellate procedures as defined in title 5.  On the other hand, if an appellant fails to allege a cognizable claim of discrimination in connection with the otherwise appealable action, the claim may be disposed of without a

---

[6] We disagree with *Browder*, however, to the extent that it held that it was not harmful error for the administrative judge to strike a facially deficient discrimination claim without holding a hearing because the administrative judge's action under such circumstances was not error at all. *Browder*, 81 M.S.P.R. 71, ¶¶ 7‑8.

hearing.[7]    *Browder*, [81 M.S.P.R. 71](#), ¶¶ 7‑8.    A cognizable claim of discrimination in this context is analogous to a claim that would survive a motion to dismiss for failure to state a claim.

¶30        Here, as discussed above, the administrative judge found that the appellant failed to raise a nonfrivolous claim that she was subjected to a hostile work environment based on sex that resulted in her unacceptable performance and, therefore, struck that portion of her affirmative defense prior to the hearing.  IAF, Tab 44 at 2-3.  In so finding, the administrative judge reasoned that the appellant failed to explain why she believed that alleged inappropriate sexual conduct on the part of others in the workplace caused her unacceptable performance and resulting removal and failed to provide the date, time, and location of each incident.  *Id*.  Additionally, the administrative judge noted that "[s]ome of the incidents reported were clearly based upon rumor or conversations overheard."  *Id*. at 2.  To the extent that the administrative judge struck the appellant's hostile work environment affirmative defense for failure to establish a genuine issue of material fact in dispute by providing insufficient detail, he improperly rendered summary judgment on this issue.  *See Anderson*, 477 U.S. at 247‑49.  Nonetheless, we find that he properly struck the appellant's hostile work environment affirmative defense because, taking her allegations as true and

---

[7] Although an administrative judge need not hold a hearing on a discrimination claim raised in connection with an otherwise appealable action when the appellant fails to state a cognizable claim of discrimination, the Board's admonition in *Redd* that administrative judges should be extremely cautious in resolving discrimination claims without hearings still applies when determining whether to strike such an affirmative defense for failure to state a claim.  *See Redd*, [101 M.S.P.R. 182](#), ¶ 14.  Thus, in cases in which administrative judges will be holding an evidentiary hearing, it generally will be preferable to allow the appellant to present whatever evidence she has on discrimination, as this approach promotes development of a complete record, should either party seek review.  *Id.*

drawing all reasonable inferences in her favor, she cannot prevail on her hostile work environment claim as a matter of law. *See Leider*, 301 F.3d at 1295.

¶31 Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e‑2(a)(1). Title VII is violated "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' . . . that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 65, 67 (1986)). Title VII does not impose a general workplace civility code and does not prohibit all workplace harassment, but only that which involves statutorily proscribed forms of discrimination. *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998).

¶32 Accepting as true all of the appellant's factual allegations about the "inappropriate sexual relationship" between two coworkers, she has failed to state a cognizable claim of a hostile work environment based on her sex. Her allegations that she and others located in proximity to her cubicle—without regard to their sex—were generally exposed to distracting office flirtation is not the type of situation covered by title VII. *See id.* As such, the appellant's hostile work environment affirmative defense is facially deficient and, rather than eliciting relevant, admissible evidence on a disputed fact, a hearing on this claim would have been an empty ritual. Accordingly, we find no error in the administrative judge's decision to strike this claim without a hearing.

The appellant failed to prove her race-based discrimination affirmative defense.

¶33 The appellant argued below that she and other African American VCEs were treated less favorably than Caucasian VCEs regarding seating assignments, distributing work assignments, assisting with work assignments, and applying performance standards. IAF, Tabs 1, 100; HCDs (Aug. 18, 2015) (Sept. 10‑11,

2015).  During redirect examination at the hearing, the appellant also alleged, for the first time, that one Senior VCE used racially discriminatory nicknames when speaking with other Senior VCEs regarding African American VCE trainees. HCDs (Sept. 10-11, 2015).  Based on the evidence and hearing testimony, however, the administrative judge concluded that the agency did not discriminate against the appellant in terms of seating assignments, distributing or assisting with work assignments, or applying performance standards.  ID at 10-23.  In addition, the administrative judge found that the Senior VCE in question did not make the alleged discriminatory statements attributed to him by the appellant.  ID at 23-25.  The appellant challenges these findings on review.  PFR File, Tabs 3, 6.

¶34     Several months before the administrative judge issued the initial decision in the instant appeal, the Board issued its decision in *Savage*, which clarified the evidentiary standards and burdens of proof under which the Board analyzes discrimination and retaliation claims.  *Savage*, 122 M.S.P.R. 612, ¶¶ 42-43, 51. Although the administrative judge referenced *Savage* in his discussion of the applicable law, ID at 5-7, he applied, in part, the *McDonnell Douglas* burden-shifting analytical framework, ID at 7-8, 25.[8]  As noted above, in *Savage*, the Board held that the *McDonnell Douglas* framework has no application to

---

[8] To establish a claim of prohibited employment discrimination under the burden-shifting method of *McDonnell Douglas*, the employee first must establish a prima facie case of racial discrimination; the burden then shifts to the agency to articulate a legitimate nondiscriminatory reason for its action; and, finally, the employee must show that the agency's stated reason is merely a pretext for prohibited discrimination.  *McDonnell Douglas*, 411 U.S. at 802-04.  Although the administrative judge did not expressly refer to the burden-shifting method, he drew an inference in favor of the agency that it had articulated a legitimate nondiscriminatory reason for its action, tasked the appellant with showing that the agency's stated reason was mere pretext for discrimination, and concluded that the appellant failed to show that "the agency's articulated legitimate nondiscriminatory reasons in support of its action were a mere pretext for race discrimination."  ID at 7-8, 25.

Board proceedings. *Savage*, 122 M.S.P.R. 612, ¶ 46. Although we agree with the administrative judge's conclusion that the appellant failed to establish her discrimination affirmative defense, we modify the portion of the initial decision that applies the burden-shifting framework and supplement the administrative judge's analysis consistent with *Savage*.

¶35      In *Savage*, we stated that, when an appellant asserts an affirmative defense of discrimination or retaliation under 42 U.S.C. § 2000e-16, the Board first will inquire whether the appellant has shown by preponderant evidence that the prohibited consideration was a motivating factor in the contested personnel action. *Savage*, 122 M.S.P.R. 612, ¶ 51. Such a showing is sufficient to establish that the agency violated 42 U.S.C. § 2000e-16, thereby committing a prohibited personnel practice under 5 U.S.C. § 2302(b)(1). *Naval Station Norfolk-Hearing 2 v. Department of the Navy*, 123 M.S.P.R. 144, ¶ 28 (2016); *Savage*, 122 M.S.P.R. 612, ¶ 51. If the appellant meets this initial burden, the Board then will inquire whether the agency has shown by preponderant evidence that the action was not based on the prohibited personnel practice, i.e., that it still would have taken the contested action in the absence of the discriminatory or retaliatory motive. *Naval Station Norfolk Hearing 2*, 123 M.S.P.R. 144, ¶ 28; *Savage*, 122 M.S.P.R. 612, ¶ 51. If the Board finds that the agency has made that showing, its violation of 42 U.S.C. § 2000e-16 will not require reversal of the action. *Naval Station Norfolk-Hearing 2*, 123 M.S.P.R. 144, ¶ 28; *Savage*, 122 M.S.P.R. 612, ¶ 51.

¶36      In determining whether the appellant has met her initial burden to show a motivating factor, the Board must consider all of the evidence together as a whole without sorting evidence into different piles, labeled "direct" or "indirect" that are evaluated differently. *Gardner v. Department of Veterans Affairs*, 123 M.S.P.R. 647, ¶ 29 (2016) (citing *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016)). Therefore, we must first determine whether, on the basis of all of the evidence, the appellant has shown by preponderant evidence that her termination was motivated by discriminatory animus. *Id.*

¶37     As noted above, the administrative judge found that the appellant failed to show that the agency discriminated against her in terms of seating assignments, distributing work assignments, assisting with work assignments, or applying performance standards.  ID at 10-23.  In so finding, the administrative judge credited the hearing testimony of the appellant's supervisor (supervisor) who testified that seating and work were assigned in a nondiscriminatory manner, and the three Senior VCEs, who all consistently testified that they assisted the appellant when she came to them for assistance and that they never refused to help her.  ID at 10-15.  On review, the appellant argues that the administrative judge erred in crediting the hearing testimonies of the agency's witnesses and ignored evidence.  PFR File, Tab 3 at 8-13, 16-18, Tab 6 at 8-16.

¶38     The Board must defer to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing, and may overturn such determinations only when it has "sufficiently sound" reasons for doing so.  *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002).  Here, the administrative judge explained that he observed each witness who testified at the hearing and, based on the *Hillen* factors,[9] found that the agency witnesses generally were more credible than the appellant because they testified in a straightforward manner, were consistent with each other and the written record, and their version of events was inherently more likely than the appellant's version of events.  ID at 8-9.  On the other hand, he found that the appellant's version of events often changed depending on who was asking her questions, was

---

[9] In *Hillen*, the Board held that, to resolve credibility issues, the administrative judge must identify the factual questions in dispute, summarize the evidence on each disputed question, state which version he believes, and explain in detail why he found the chosen version more credible.  *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987).  *Hillen* further articulated a list of seven factors that the administrative judge must consider in making credibility determinations.  *Id.*

not consistent with the written record, and was inherently unlikely. ID at 9. The administrative judge also noted that the appellant's allegations were often based only on surmise or conjecture and were not corroborated by other witnesses. *Id.*

¶39    The appellant argues on review that her supervisor repeatedly contradicted himself, his testimony "does not pass the common sense or credibility test," and his "reason and rationale seemed to be fabricated to hide an improper motive." PFR File, Tab 3 at 8-9. For example, the appellant argues that, although the supervisor first testified that he generally assigned seating on the basis of the employee's hire date, he later "contradict[ed] himself to state that the employees were hired at different times, dates and years by the Agency."[10] *Id.* at 8. As another example, the appellant asserts that the supervisor testified that "he knew nothing of the VCEs when he assigned their seats other than their names and dates they were hired," but that he later contradicted himself by testifying that "he knew personal information about some employees since they had been working at the Agency, but also he knew marital status and other information." *Id.* at 9. The appellant also argues that the supervisor testified that he was the only one who distributed work, but that he later "admitted there was a disproportionate amount of claims being distributed and that every employee was not receiving equal amounts . . . the system was broken for a time and a number of claims were distributed."[11] *Id.* at 13. We have considered these examples of

---

[10] As explained in the initial decision, the supervisor testified that the seating assignments generally were based on hire date, but that there were some exceptions. ID at 11; HCD (Sept. 11, 2015). Specifically, he testified that: three Senior VCEs on the VRAP team were assigned seats first and had the opportunity to request a location based on seniority; a VCE who had been working in another division had the opportunity to request a seat when she was selected for the VRAP team position; and two married employees were seated near each other. ID at 11; HCD (Sept. 11, 2015).

[11] As explained in the initial decision, the supervisor testified that, prior to March 2013, claims examiners could pull cases from the original claims queue as necessary but, as the volume of claims decreased, there was a concern that some VCEs were taking a disproportionate share of the cases. ID at 13; HCD (Sept. 11, 2015). He further

alleged contradictory statements, as well as others cited by the appellant on review, but find that, even when the supervisor later clarified his initial statements, his subsequent statements are not necessarily contradictory and do not constitute "sufficiently sound" reasons for overturning the administrative judge's credibility determination. *See Haebe*, 288 F.3d at 1301.

¶40        The appellant also argues that the administrative judge ignored a seating chart, which shows that she and other African American employees were racially segregated from Caucasian employees, and failed to consider the "fact that almost everyone who was sitting in the segregated section which was referred to as 'the hood' was transferred, fired or did not complete their term." PFR File, Tab 3 at 8-11, Tab 6 at 8-12. However, the administrative judge's failure to mention in the initial decision the seating chart and some of the appellant's allegations regarding the seating arrangement does not mean he did not consider them and is not a basis to overturn his well-reasoned findings. *See Gardner*, 123 M.S.P.R. 647, ¶ 25 (citing *Marques v. Department of Health & Human Services*, 22 M.S.P.R. 129, 132 (1984), *aff'd,* 776 F.2d 1062 (Fed. Cir. 1985) (Table)). The administrative judge considered the record as a whole and—based on the supervisor's credible testimony, the credible testimony of two agency witnesses that the appellant's cubicle location was seen as desirable by some employees, and the fact that no one, including the appellant, complained to a manager that they felt the seating arrangement was discriminatory—concluded that the agency assigned seating in a nondiscriminatory manner. ID at 10-12. Furthermore, the administrative judge expressly considered the appellant's argument that "almost everyone" seated near her was unsuccessful in the VRAP, but found that this contention was "simply not true." ID at 18.

testified that, to address this concern, he changed the process of assigning cases in March 2013 so that he or, in his absence, the division supervisor reviewed new original claims each day and assigned them in an equal manner. ID at 13; HCD (Sept. 11, 2015).

¶41  Regarding the administrative judge's finding that the agency applied the performance standards in a nondiscriminatory manner, the appellant argues that the administrative judge "totally ignored" the fact that "there was no formal set of standards" and that her performance was evaluated in an "arbitrary and capricious" manner. PFR File, Tab 3 at 13, Tab 6 at 15. The record reflects, however, that the appellant signed the monthly Individual Performance Reports, which set forth her productivity and accuracy requirements and her performance for the previous month. IAF, Tab 64 at 153-61. The administrative judge thoroughly discussed the appellant's performance standards and concluded that she consistently failed to meet them. ID at 18-23. The administrative judge further found no evidence to suggest that the agency discriminated against the appellant in applying the VCE performance standards to her work performance. ID at 23. The appellant's arguments on review provide no basis to disturb these findings.

¶42  The appellant also argues that the administrative judge erred in finding that the Senior VCEs did not provide assistance in a discriminatory manner because, among other reasons, he failed to mention that one of the Senior VCEs testified that he believed he was a supervisor. PFR File, Tab 3 at 17-18. Her arguments, however, provide no basis to disturb the administrative judge's credibility determinations or his conclusion that the Senior VCEs provided assistance in a nondiscriminatory manner. ID at 16‑18.

¶43  Lastly, as noted above, the administrative judge found that the Senior VCE alleged by the appellant to have used discriminatory nicknames in conversations with other Senior VCEs in the workplace did not do so. ID at 23-25. In so finding, the administrative judge relied on the hearing testimonies of the accused Senior VCE and two other Senior VCEs, who all "emphatically and unequivocally" denied that they had made such comments or heard any coworkers make such comments. ID at 24. The administrative judge also relied on their testimonies that no one ever complained to them about hearing such comments in

the workplace and, if they had heard such comments, they would have reported it to a manager. *Id.* Given the arrangement of the cubicles and their proximity to one another, the administrative judge concluded that, if the Senior VCE had made the racially discriminatory comments attributed to him by the appellant, other employees would have heard and complained about the comments. *Id.* However, the undisputed testimony was that no one made or filed such complaints with management. *Id.* The administrative judge also appeared to find probative the fact that the appellant failed to raise this allegation—which goes "directly to the heart of her allegation of race discrimination"—at any time during the proceeding until redirect examination. *Id.*; HCD (Sept. 10-11, 2015). The appellant generally challenges these findings on review and argues that "[t]he administrative judge ignored a pattern of discrimination and did not test the credibility of witnesses with conflicting statements." PFR File, Tab 3 at 18-24, Tab 6 at 16-18. The appellant's arguments, however, constitute mere disagreement with the administrative judge's findings and provide no basis to overturn his credibility determinations or his conclusion that the Senior VCE in question did not make the discriminatory comments attributed to him.

¶44       In sum, we agree with the administrative judge's finding that the appellant failed to show by preponderant evidence that racial discrimination was a motivating factor in the agency's action. The appellant's arguments on review constitute mere disagreement with the administrative judge's well-reasoned findings and provide no basis to disturb the initial decision. *See Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997) (finding no reason to disturb the administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions on issues of credibility).

## ORDER

This is the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

### NOTICE TO THE APPELLANT REGARDING
### YOUR FURTHER REVIEW RIGHTS

You have the right to request further review of this final decision.

Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC).  *See* title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)).  If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order.  If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court.  *See* 5 U.S.C. § 7703(b)(2).  You must file your civil action with the district court no later than 30 calendar days after your receipt of this order.  If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court‑appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.


FOR THE BOARD:


_____
Jennifer Everling
Acting Clerk of the Board
Washington, D.C.